# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| LISA PECK,<br>　　　　　　　Plaintiff,<br><br>　　　v.<br><br>CAROLYN W. COLVIN,[1]<br>Acting Commissioner,<br>Social Security Administration,<br>　　　　　　　Defendant. | **CIVIL ACTION<br>NO. 12-40146-DHH** |

## DECISION

### March 14, 2014

Hennessy, M.J.

　　　The Plaintiff, Lisa Peck, seeks reversal of the decision by the Defendant, the Commissioner of the Social Security Administration ("the Commissioner"), denying her Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), or, in the alternative, remand to the Administrative Law Judge ("ALJ").[2]   (Docket #20).   The Commissioner seeks an order affirming her decision.   (Docket #28).   These matters are now ripe for adjudication.

　　　For the reasons that follow, Plaintiff's Motion to Reverse (Docket #20) is DENIED to the extent that it seeks remand to a different ALJ and ALLOWED in all other respects, and

---

[1] Under Fed. R. Civ. P. 25(d), as of February 14, 2013, Carolyn W. Colvin is substituted for Michael J. Astrue, the former Commissioner of the Social Security Administration.

[2] In general, the legal standards applied are the same regardless of whether a claimant seeks DIB or SSI.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this Decision should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.

Defendant's Motion for Order Affirming the Decision of the Commissioner (Docket #28) is DENIED.

I.      BACKGROUND

A.      Procedural History

Peck protectively filed an application for DIB and an application for SSI on November 3, 2008, alleging in both that she had been disabled since December 7, 2007.  (Tr. 295).   Her applications were initially denied on March 23, 2009.  (Tr. 153).  Peck filed a Request for a Reconsideration, which was denied on December 22, 2009.  (Tr. 156, 160).  On December 30, 2009, Peck filed a Request for a Hearing before an ALJ.  (Tr. 163).  On March 16, 2011, a hearing was held before ALJ Leonard Cooperman.  (Tr. 81).  Peck, represented by her counsel, Sean Grabowski, a medical witness, and a vocational expert ("VE") retained by the Commissioner, appeared and testified at the hearing.  (Id.).   On July 6, 2011, a second hearing was held before the ALJ, because the first hearing was prematurely concluded due to time constraints. (Tr. 37).  Peck, represented by her counsel, Tamara Gallagher, who is an attorney at the same law firm as Grabowski, and the same VE, appeared and testified at the hearing.  (Id.). On August, 23, 2011, the ALJ rendered a decision unfavorable to Peck.  (Tr. 10).  The ALJ found that Peck had not been disabled from December 7, 2007, through the date of the decision. (Tr. 14).

Having timely pursued and exhausted her administrative remedies before the Commissioner, Peck filed a Complaint in this Court on October 18, 2012, pursuant to 42 U.S.C. § 405(g).  (Docket #1).  Peck filed the Motion for Reversal on March 27, 2013, (Docket #20), and the Commissioner filed a cross-motion on June 11, 2013, (Docket #28) to which Peck responded (Docket #31).

B.      Administrative Decision

In assessing Peck's request for benefits, the ALJ conducted the familiar five-step sequential evaluation process that determines whether an individual is disabled and thus entitled to benefits.  See 20 C.F.R. § 404.1520; Goodermote v. Sec'y of Health & Human Servs., 690 F.2d 5, 6-7 (1st Cir. 1982).

First, the ALJ considers the claimant's work activity and determines whether he or she is "doing substantial gainful activity."  20 C.F.R. § 404.1520(a)(4)(i).  The ALJ found that Peck had not engaged in substantial gainful activity since December 7, 2007.  (Tr. 16).

At the second step, the ALJ must determine whether the claimant has a medically determinable impairment or combination of impairments that is "severe."   20 C.F.R. § 404.1520(a)(4)(ii).  The ALJ determined that Peck had the following severe impairments: bilateral carpal tunnel syndrome, chronic pain syndrome, foot pain, TMJ, "status post multiple surgeries to the right shoulder," arthritis, and bipolar disorder/depression.  (Tr. 16).  The ALJ noted that Peck also suffered from Barrett's esophagus, gastroesophageal reflux disease, allergies, and sinus problems, but found them to be non-severe.  (Id.).

Third, the ALJ must determine whether the claimant has impairments that meet or are medically equivalent to the specific list of impairments listed in Appendix 1 of Subpart P of the Social Security Regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant has an impairment that meets or equals one of the impairments listed in Appendix 1, and meets the duration requirement, then the claimant is disabled.  Id.  The ALJ found that Peck did not have an impairment or combination of impairments meeting, or medically equivalent to, an Appendix 1 impairment.  (Tr. 24).

At the fourth step, the ALJ considers the claimant's residual functional capacity ("RFC") and the claimant's past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv).  Whenever there is a determination that the claimant has a significant impairment, but not an "Appendix 1 impairment," the ALJ must determine the claimant's RFC.  20 C.F.R. § 404.1520(e).  An individual's RFC is her ability to do physical and mental work activities on a sustained basis, despite limitations from her impairments.  20 C.F.R. § 404.1545(a)(1).  Here, the ALJ found:

> [Peck] has the residual functional capacity to perform light work[3] . . . except she would require a sit/stand option at her discretion in deference to foot pain, could engage in only occasional repetitive activity bilaterally in deference to upper extremity pain, could not engage in overhead lifting or reaching with her right upper extremity, and could have only occasional interaction with others in deference to her mental impairments.

(Tr. 25).  The ALJ determined that Peck's RFC precluded a return to any past relevant work.  (Tr. 26).

At the fifth step, the ALJ asks whether the claimant's impairments prevent her from performing other work found in the national economy.  20 C.F.R. § 404.1520(a)(4)(v).  The ALJ determined that, based upon her RFC and the testimony of the VE, jobs exist in significant numbers in the national economy that Peck could perform, including night security guard and inspector of bottle labels.  (Tr. 26-27).  Accordingly, the ALJ found that Peck was not disabled at any time from December 7, 2007 through August 23, 2011.  (Tr. 27).

---

[3] Light work:

> [I]nvolves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(a).

4

## II.     STANDARD OF REVIEW

The District Court may enter "a judgment affirming, modifying, or reversing the decision

of the Commissioner of Social Security, with or without remanding the cause for a rehearing."

42 U.S.C. § 405(g).   However, the Court may not disturb the Commissioner's findings where

they are supported by substantial evidence and the Commissioner has applied the correct legal

standard.  Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000).  Substantial evidence

exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as

adequate to support his conclusion."  Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d

218, 222 (1st Cir. 1981).   Although the administrative record might support multiple

conclusions, the Court must uphold the Commissioner's findings when they are supported by

substantial evidence.  Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 770 (1st

Cir. 1991).

## III.    ANALYSIS

### A.    Conflicts between Vocational Expert Testimony and the Dictionary of Occupational Titles Descriptions

Peck argues that the ALJ did not meet his step five burden because the ALJ failed to

resolve the inconsistencies between testimony of the VE and the Dictionary of Occupational

Titles ("DOT") descriptions.  (Docket #20 at 13-14).

In response to a hypothetical that mirrored the RFC that the ALJ ultimately determined

Peck possessed, the VE named night security guard, DOT code 372.667-034, as an example of a

job Peck could perform.[4]  (Tr. 138).  The Commissioner concedes that this occupation requires

---

[4] The ALJ also found that Peck also retained the capacity to perform the job of inspector of bottle labels.  (Tr. 27).
The Commissioner, conceding that there was no reasonable explanation elicited for the discrepancy between the
DOT and the VE's testimony in relation to the inspector of bottle labels occupation, does not rely on that occupation
to support the ALJ's step five finding.  (Docket #31 at 18 n.5).  While the ALJ based his conclusion that there
existed jobs in significant numbers in the national economy that Peck could perform on both the night security guard
and inspector of bottle labels occupations, Peck advances no argument that the night security guard jobs, of which

frequent reaching and handling, which exceeds Peck's RFC as formulated by the ALJ and conveyed to the VE. (Docket #29 at 17). Thus, a conflict exists between the VE's testimony and the DOT description of the night security guard occupation. (Id.).

> Occupational evidence provided by a VE or [Vocational Specialist ("VS")] generally should be consistent with the occupational information supplied by the DOT. When there is an apparent unresolved conflict between VE or VS evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency
>
> . . .
>
> When a VE or VS provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE or VS evidence and information provided in the DOT. In these situations, the adjudicator will:
>
> - Ask the VE or VS if the evidence he or she has provided conflicts with information provided in the DOT; and
>
> - If the VE's or VS's evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> . . .
>
> When vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 SSR LEXIS 8, at *4-5 (Dec. 4, 2000). The ALJ did not address this conflict between the VE's testimony and the DOT description of the night security guard occupation either at the hearing or in his decision and, in fact, explicitly stated in his decision

---

the VE testified that there were 1,000 in Massachusetts and 125,000 nationally, do not exist in sufficient numbers in the local and national economy.

that, "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (Tr. 27).

The Commissioner concedes that the ALJ erred in failing to recognize and address the conflict between the VE's testimony and the DOT, but argues that the error was harmless under the circumstances of this case.  (Docket #29 at 17).  At the hearing, Peck's counsel questioned the VE about the reaching requirement of the night security guard occupation and its compatibility with Peck's RFC:

> Atty:  -- doesn't that require as, defined by the <u>DOT</u>, frequent reaching?
>
> VE:  It does by the <u>DOT</u>, but it doesn't in observation, in observation of the job when I go out and I've looked at these jobs.  And doing it at night, what is she going to be reaching for?  There's nothing to reach for.  She would just be occasionally walking, otherwise sitting at a desk.
>
> Atty:  Okay.
>
> VE:  She wouldn't have to reach at all.  Maybe to look at a piece of paper once in a while.

(Tr. 142).  The Commissioner asserts that the VE thereby provided a "reasonable explanation" for the discrepancy between her testimony and the DOT description of the night security guard occupation, which is all that SSR 00-4p requires.  (Docket #29 at 18).  While the VE did not expressly address the discrepancy related to the handling requirement of the occupation, the Commissioner argues that it is a logical inference from the VE's hearing testimony that the handling requirement of the night security guard occupation as described in the DOT did not reflect the requirements of the job as actually performed based on the VE's experience.[5]  (<u>Id.</u> at 18 n.4).

---

[5] The Commissioner does not assert that Peck's failure to raise the inconsistencies with respect to the handling requirement between the VE's testimony and the DOT during the hearing precludes Peck from doing so on appeal.

The Court agrees with the Commissioner that the VE provided a reasonable explanation for the discrepancy between her testimony and the DOT description of the night security guard occupation with respect to the <u>reaching</u> requirement.  However, the Court does not find that it logically follows that night security guards, or some percentage thereof, are not required to engage in frequent <u>handling</u> activities.  The VE's testimony concerning her observations of the night security guard occupation was made in direct reference to the reaching requirement; her observations may have been more expansive if asked about the handling requirement.  Additionally, the VE's testimony that the night security guard occupation involved "occasionally walking, otherwise sitting at a desk," is not inconsistent with a job requiring frequent handling.  Thus, the ALJ's failure to recognize and address the conflict between the VE's testimony and the DOT was not harmless, and, therefore, there was not substantial evidence to support the ALJ's determination of nondisability.  Hence, the case must be remanded.  On remand, the ALJ should resolve the conflict between the VE's testimony and the DOT, following the guidance of SSR 00-4p.[6]

B.      Assignment of the Present Case to a Different ALJ

Peck requests that the case be assigned to a different ALJ, arguing that ALJ Cooperman has displayed a lack of objectivity towards Peck.  (Docket #20 at 12).  As an example of the ALJ's lack of objectivity, Peck states that the ALJ took the unusual step of calling her primary care physician in the middle of the March hearing, but then rejected her opinion as to the amount

---

[6] Peck also argues that the case must be remanded because the ALJ violated Peck's due process rights by denying her the opportunity to effectively cross-examine the VE, the ALJ's RFC lacked substantial support, and the ALJ's step five decision was based on a flawed hypothetical.  (Docket #20).  Having found that the case is properly remanded on the basis of the conflict between the VE's testimony and the DOT descriptions, the Court does not address the merits of Peck's additional arguments.  However, as the matter has been remanded, the Court recommends that the ALJ allow plaintiff's representative a chance to revisit the testimony elicited at the first hearing.  (<u>See</u> Docket #29 at 19 (recognizing that "in an ideal scenario, the ALJ would have asked plaintiff's representative at the second hearing whether he wanted to revisit the vocational testimony elicited at the first hearing[.]")).

of weight that Peck could lift.  (Id.).  Peck also states that the ALJ's lack of objectivity was revealed when he repeatedly questioned her credibility due to purported drug-related behavior, although he did not find drug or alcohol abuse to be a severe or non-severe impairment.  (Id.).

"The general rule appears to be that it is the Commissioner who has the discretion to assign a case to a new ALJ on remand."  Simpson v. Colvin, No. 12-11435-RBC, 2014 U.S. Dist. LEXIS 30792, at *30 (D. Mass. Mar. 10, 2014).  However, courts have recognized that there are circumstances where departure from that general rule is appropriate.  One such circumstance is where the record shows clearly that the ALJ is biased.  See Davis v. Astrue, No. 10-cv-404-PB, 2011 U.S. Dist. LEXIS 121777, at *4 (D.N.H. Oct. 20, 2011) ("Absent a showing of bias or wrongdoing on the part of the ALJ . . . the fact that the ALJ allegedly did not reach the right decision is insufficient to require the Commissioner to assign the case to a different ALJ."); McLaurin v. Apfel, 95 F. Supp. 2d 111, 116 (E.D.N.Y. 2000) ("[A] reviewing court will direct the Commissioner to appoint a new ALJ only when the record shows clearly that the ALJ is biased.").  "A plaintiff bears the burden of overcoming the presumption that his or her case was decided by an honest and impartial adjudicator."  Brennan v. Barnhart, No. 05-123-P-H, 2006 U.S. Dist. LEXIS 3287, at *11 (Jan. 25, 2006).  "[A]ny alleged prejudice on the part of the decisionmaker must be evident from the record and cannot be based on speculation or inference."  Navistar Int'l Transp. Corp. v. U.S. EPA, 941 F.2d 1339, 1360 (6th Cir. 1991).  To prove bias, a plaintiff must "show that the ALJ's behavior, in the context of the whole case, was so 'extreme as to display clear inability to render fair judgment.'"  Rollins v. Massanari, 261 F.3d 853, 858 (9th Cir. 2001) (quoting Liteky v. United States, 510 U.S. 540, 551 (1994)). "[E]xpressions of impatience, dissatisfaction, annoyance, and even anger, that are within the

9

bounds of what imperfect men and women . . . sometimes display do not establish bias." Id. (quoting Liteky, 510 U.S. at 555-56).

The ALJ properly questioned Peck about her drug and alcohol abuse, which was a documented condition in the medical record, and which, the ALJ discovered during the initial hearing, Peck was untruthful about with her primary care physician. See 20 CFR 404.1535 ("If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability."); see also Brennan, 2006 U.S. Dist. LEXIS 3287, at *11-12 ("[A] careful review of the record as a whole, including the hearing transcript, persuades me that although the administrative law judge was blunt, brusque and even downright rude, see, e.g., Record at 395 ('So you guys aren't trying hard enough [to quit smoking].  You're asking to be put on the dole for disability for the rest of your life because of a neuropathy that's controllable by stopping smoking?'), he was not biased.").  The ALJ was also entitled to reject Peck's primary care physician's assessment of her RFC and such rejection does not indicate bias. See 20 C.F.R. § 404.1527(c)(2) (stating that an ALJ may chose not to give the treating source's opinion controlling weight if the ALJ gives good reasons for the weight accorded).  Assignment of this case on remand to a new ALJ is not warranted.

IV.    CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Remand (Docket #20) is DENIED to the extent that it seeks remand to a different ALJ and ALLOWED in all other respects, Defendant's Motion for Order Affirming the Decision of the Commissioner (Docket #28) is

DENIED, and the matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for

further proceedings consistent with this opinion.[7]


/S/ David H. Hennessy
David H. Hennessy
UNITED STATES MAGISTRATE JUDGE

---

[7] This Court expresses no opinion as to the appropriate outcome of additional administrative proceedings.